IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

IN RE: RAMON and LISA BURROW, Debtors      CASE NO. 3:09-bk-18876
     CHAPTER 13

MEMORANDUM OPINION
AND
ORDER SUSTAINING OBJECTION TO PROOF OF CLAIM IN PART

On December 2, 2010, the Court heard Debtor's *Objection to Proof of Claim* ("**Objection to Claim**") (docket #73) and the Response filed by PHH Mortgage Corporation (docket #85).[1] Joel Hargis appeared on behalf of the Debtors. Debtor Ramon Burrow was also present. Sharon Fewell appeared on behalf of PHH Mortgage Corporation ("**PHH**"). At the close of evidence, the Court took the matter under advisement.

This is a core proceeding under 28 U.S.C. § 157(b)(2)(B). This Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule of Procedure 7052. To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such; to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such.

As explained herein, the Court sustains the Debtors' objection to certain foreclosure fees as unreasonable, and overrules the Debtors' objection with respect to PHH's standing to file a claim.

---

[1] PHH's objection to confirmation of Debtors' proposed Chapter 13 plan (docket #29) was also set for hearing, but the parties chose to try the Objection to Proof of Claim first and continue the objection to confirmation.

## FACTS

These are the uncontested facts:

1. Debtors filed a voluntary petition under Chapter 13 on December 3, 2009.

2. Debtors filed their proposed Chapter 13 plan on February 17, 2010. Debtors' plan listed PHH as a long-term secured creditor with an arrearage of $6,500 and a regular monthly payment of $375.

3. PHH filed an objection to the confirmation of the Debtors' proposed Chapter 13 plan on February 18, 2010, asserting that the correct arrearage amount was $14,255.11, and that the ongoing regular mortgage payment was $439.94.

4. PHH filed a proof of claim in Debtors' bankruptcy case on February 18, 2010 (**"Original Proof of Claim"**), for a claim secured by a mortgage in the amount of $69,145.77 which included mortgage arrears of $14,255.11.[2]

5. Exhibit A to the Original Proof of Claim detailed PHH's $14,255.11 arrearage claim which included missed payments of $4,752.41; $91.10 for appraisal fees; $145.75 for property preservation fees; an escrow shortage of $1,720.61; a bankruptcy proof of claim fee of $300; a bankruptcy objection to confirmation fee of $200; foreclosure fees of $450; and $6,595.24 for foreclosure costs.

6. The $6,595.24 in foreclosure costs are further itemized as follows:

---

[2] The Court took judicial notice of all filings and records in this case, including the proofs of claim. *See* Fed.R.Evid. 201; *In re Henderson*, 197 B.R. 147, 156 (Bankr. N.D. Ala. 1996) ("The court may take judicial notice of its own orders and of records in a case before the court, and of documents filed in another court.") (citations omitted); *see also In re Penny*, 243 B.R. 720, 723 n.2 (Bankr. W.D. Ark. 2000).

| **Date** | **Description** | **Amount** |
|---|---|---|
| 7/1/09 | Court Required Mailing Cost | $33.24 |
| 5/4/09 | Posting | $2,550.00 |
| 5/4/09 | Publication - Notice of Sale | $3,087.00 |
| 6/3/09 | Recording - Assignment | $40.00 |
| 5/20/09 | Recording - Misc. | $180.00 |
| 2/27/09 | Recording - Notice of Default | $480.00 |
|  | Adjustment | -$20.00 |
| 3/24/09 | Recording Substitution | $20.00 |
| 3/5/09 | Title Search | $225.00 |
|  | **Total** | **$6,595.24** |

7. Also attached to the Original Proof of Claim was a Note between GE Money Bank as the lender and the Debtors as borrowers for the principal amount of $56,000 with interest accruing at the rate of 6.786% dated April 5, 2007 (the **"Note"**).

8. A recorded mortgage identifying GE Money Bank as the lender and the Debtors as borrowers (the **"Mortgage"**) was also attached to the Original Proof of Claim indicating that the Note was secured by certain real property at 3202 Case Street, Paragould, Arkansas, and that the mortgagee was Mortgage Electronic Registration Systems, Inc. (**"MERS"**), a separate corporation acting solely as a nominee for the lender and the lender's successors and assigns.

9. PHH filed an amended proof of claim on May 26, 2010 (**"First Amended Proof of Claim"**) reducing the claimed arrearage amount from $14,255.11 to $12,873.07. The itemized costs attached to the claim showed that PHH reduced the May 4, 2009 posting

fee from $2,550 to $1,167.96, to arrive at a total foreclosure cost figure of $5,213.20 instead of $6,595.24. No explanation was provided as to why this figure was reduced. No documents other than the itemization of fees and costs were attached to the First Amended Proof of Claim.

10. On December 1, 2010 (the day before the hearing in this matter), PHH filed a another amended proof of claim (the **"Second Amended Proof of Claim"**) further reducing the arrearage claim and attaching the Mortgage and a different copy of the Note that included an indorsement from GE Money Bank to PHH, and a blank indorsement by PHH. On the Second Amended Proof of Claim, PHH increased the posting fee from $1,167.96 to $1,300, and reduced the publication – notice of sale fee from $3,087 to $2,304.96, for total foreclosure costs of $4,563.20 and a total arrearage of $12,223.07. No additional information was provided as to why these figures were changed.

11. Paragraph 9 of the Mortgage titled, "Protection of Lender's Interest in the Property and Rights Under this Security Instrument," provides, in part:

> If (a) borrower fails to perform the covenants and agreements contained in this security agreement; (b) there is a legal proceeding that might significantly affect lender's interest in the property and/or rights under this security instrument, such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over its security instrument, or to enforce laws or regulations, or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and security and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and paying reasonable attorneys' fees to protect its interest in the Property and/or

4

rights under this Security Instrument, including its secured position in a bankruptcy proceeding. . . .

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

12. Paragraph 14 of the Mortgage, titled "Loan Charges," provides:

Lender may charge borrower fees for services performed in connection with the borrower's default for the purpose of protecting lender's interest in the property and rights under this security instrument, including, but not limited to, attorney's fees, property inspection, and valuation fees. In regard to any other fees, the absence of expressed authority in this security instrument to charge a specific fee to borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this security instrument or by applicable law.

13. Paragraph 22 of the Mortgage, titled "Acceleration; Remedies," provides, in part:

. . . Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorney's fees and costs of title evidence.

14. PHH initiated non-judicial foreclosure proceedings with respect to the mortgage on the Debtors' home on at least three different occasions during the year preceding the Debtors' bankruptcy filing.

15. Jan Griffith, Greene County Circuit Clerk, testified as to the process of filing a non-judicial foreclosure under the Arkansas Statutory Foreclosure Act.[3] She said that the

---

[3] Although not specifically relevant to this case, it is informative to note that Ms. Griffith testified that for the year 2010, there had been 173 non-judicial foreclosure postings in Greene County as of November 30, 2010.

5

process begins when her office receives a Notice of Default and Intent to Sell from one of the attorneys' offices in Arkansas that is authorized to proceed with non-judicial foreclosures. A $160 fee is filed with the Notice of Default and Intent to Sell which includes a $140 fee for opening the case (with $25 going to the State Crime Laboratory and $15 going to the state's law schools), and a $20-25 fee for recording the instrument ($15 for the first page and $5 for each subsequent page).

16. Receipts from Ms. Griffith as Greene County Circuit Clerk were entered into evidence as Debtors' Exhibit 1 and showed that the non-judicial foreclosure fees were paid by Shapiro and Kirsh, LLP (PPH's counsel) on three occasions in these amounts: $160 on March 2, 2009; $180 on June 4, 2009; and $180 on September 8, 2009. Each included the $160 filing fee for a Notice of Default and Intent to Sell, and the latter two included a $20 charge for canceling a foreclosure sale. Another receipt shows a $50 fee for an affidavit filed on July 27, 2009.

17. A file-marked copy of a Mortgage Notice of Default and Intention to Sell dated February 27, 2009, was introduced as Debtors' Exhibit 4. Mrs. Griffith testified that it was filed on March 2, 2009.

18. Ms. Griffith testified that an Assignment of Mortgage executed on May 19, 2009, was recorded on June 11, 2009. The Assignment states that GE Money Bank assigned the mortgage on the Debtors' home to PHH. The Assignment was accepted into evidence as Debtors' Exhibit 5.

19. Ms. Griffith further testified that to meet the posting requirement of the

Arkansas Statutory Foreclosure Act, Notices of Default and Intent to Sell are tacked onto a bulletin board approximately 15 feet from the front doors of the Greene County Courthouse. A photograph of the bulletin board was submitted into evidence as Debtors' Exhibit 2.

20. A breakdown of fees and costs charged by the third party performing foreclosure services for PHH in connection with the attempted foreclosures was stipulated to by PHH and accepted as Debtors' Exhibit 3 (hereinafter referred to as **"Third Party Fees/Costs"**). The Third Party Fees/Costs indicates that $425 was charged for "posting" on three different occasions. The Third Party Fees/Costs also indicate that a refund of certain charges, including one of the $425 charges, was to be given. The total fees/costs reflected on the Third Party Fees/Costs was $5,613.20 which is $400 more than the total fees listed on the First Amended Proof of Claim but does not exactly match the foreclosure costs on any of the three proofs of claim.

21. The Third Party Fees/Costs shows that $175 was charged for postponing or cancelling a foreclosure sale on three occasions. Ms. Griffith testified that her office charged $20 for postponing or canceling a sale. There was no explanation as to why the foreclosures were cancelled. Again, the Third Party Fees/Costs shows that one of these $175 amounts was to be refunded.

## PARTIES' POSITIONS AND ISSUE PRESENTED

In objecting to PHH's proofs of claim (both the original and amended proofs of

claim), Debtors assert that certain foreclosure costs[4] claimed by PHH are unreasonable and that PHH lacks standing to enforce the Note secured by a mortgage on Debtors' home. Debtors assert that the foreclosure costs charged by a third party for posting foreclosure notices and for canceling two foreclosures were unreasonable in light of how much work it actually takes to perform such services, and Debtors assert that the first of at least three foreclosure suits on their property was not in compliance with the Arkansas Statutory Foreclosure Act, and therefore, any fees associated with the first foreclosure are unreasonable. Debtors argue that PHH lacks standing to enforce the Note because it attached an unindorsed copy of the Note to its first proof of claim, and only attached a copy of the indorsed Note to the Second Amended Proof of Claim which was filed the day before the hearing.

PHH contends that it has no control over what the third party foreclosure entity[5] it used to perform the foreclosure services charges, that it contacted said third party, and that the third party reduced some of its fees as reflected on the Second Amended Proof of Claim but refused to send a witness to the hearing to testify as to the reasonableness of any fees charged. On the issue of standing, PHH's counsel asserted that PHH had the indorsed Note all along but attached a copy of the original Note to its first proof of claim by mistake.

---

[4] The Debtors concede that the $450 charge for attorneys fees relating to the foreclosures are reasonable.

[5] PHH explained that the Arkansas non-judicial foreclosure statutes require it to involve a neutral third party in the posting and publication process. *See generally* Ark. Code Ann. § 18-50-105.

PHH's counsel also contended they had sent Debtors' counsel a copy of the indorsed Note some time ago.

## DISCUSSION

### Legal Standard and Burden of Proof

A filed proof of claim is *prima facie* evidence of its validity and amount if it is executed and filed in accordance with the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 3001(f). Rule 3001(a)-(c) provides that a proof of claim must be in writing, be executed by the creditor or its authorized agent, and, when based on a writing, be filed with the original or a duplicate of that writing. Fed. R. Bankr. P. 3001(a)-(c). Rule 3001(d) requires that, if the creditor claims a security interest in the debtor's property, "the proof of claim shall be accompanied by evidence that the security interest has been perfected." Pursuant to 11 U.S.C. § 502(a), a claim "is deemed allowed, unless a party in interest . . . objects."

"'Claim objectors carry the initial burden to produce some evidence to overcome the rebuttable presumption of validity.'" *In re Koontz,* 2010 WL 5625883, 7-8 (Bankr. N.D. Ind. 2010) (quoting *In re Vanhook,* 426 B.R. 296, 298-99 (Bankr. N.D. Ill. 2010) (citations omitted)). *See also In re Consumers Realty & Development Co., Inc.*, 238 B.R. 418, 422-423 (B.A.P. 8th Cir. 1999) (citing *Gran v. Internal Revenue Serv. (In re Gran),* 964 F.2d 822, 827 (8th Cir. 1992)). "Once the objecting party produces evidence rebutting the claim, the burden of proof shifts to the claimant to produce evidence establishing the validity of the claim. [*In re Gran*.] Thus, once an objection is made to the proof of claim, the ultimate burden of

9

persuasion as to the claim's validity and amount rests with the claimant." *In re Consumers Realty & Development Co., Inc*., 238 B.R. at 423 (citing *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173-74 (3rd Cir.1992); *In re Harrison,* 987 F.2d 677, 680 (10th Cir.1993)).

### **PHH's Standing to File Proof of Claim**

The Court first addresses the Debtors' objection to PHH's claim based on its alleged lack of standing to file such claim. Specifically, in their objection to PHH's claim, the Debtors questioned whether PHH was the proper party to file such claim because every document filed by PHH, including the Note and the Mortgage, showed that GE Money Bank is the lender, and that MERS acts as nominee for the lender. After PHH attached a copy of the Note indorsed to it by GE Money Bank the day before the hearing,[6] the Debtors then sought disallowance of PHH's claim in its entirety in their closing argument, and asked that the creditor be required to prove that the indorsements existed prior to the filing of the bankruptcy in the event it filed another proof of claim.[7]

The Court finds it is unnecessary to require PHH to file yet another claim and produce

---

[6] In order to enforce a negotiable instrument payable to an identified person, the instrument must be indorsed by the holder and possession transferred as provided by Ark. Code Ann. § 4-3-201(b), or if there is no indorsement, a transferee may prove the transaction through which it acquired possession of the unindorsed instrument. *See* Ark. Code Ann. § 4-3-203. PHH made no attempt to prove the transaction through which it acquired possession of the Note, but instead, relied on its production of the indorsed note.

[7] The Court notes that some bankruptcy courts apply Fed. R. Bankr. P. 7015 to amended proofs of claim, and require a creditor to seek leave of court before filing an amended proof of claim. *See e.g., In re DePugh,* 409 B.R. 84, 90 (Bankr. S.D. Tex. 2009) ("[I]n order to prevent future violations of Bankruptcy Rule 3001 and to foster judicial efficiency and economy, . . . , this Court issued a written notice and order in all of its Chapter 13 cases requiring creditors to seek leave of court or written consent of the debtor before amending a deficient proof of claim after the debtor has lodged a claim objection."). This Court has no such practice or similar rule.

evidence that it held the Note at the time of the Debtors' bankruptcy filing because the evidence before the Court shows PHH was the proper party to file the claim. A chain of title to the Note was lacking until PHH filed its Second Amended Proof of Claim, and PHH's filing the indorsed Note the day before the hearing is not well-taken.[8] The sudden appearance of an indorsement to PHH might be suspicious if it were not for the fact that other evidence in the record shows that the mortgage had already been assigned to PHH prior to the Debtor's bankruptcy petition. Specifically, the assignment executed on May 19, 2009, and recorded on June 11, 2009, states that GE Money Bank assigned the mortgage on the Debtors' home to PHH. The Note indorsed to PHH along with the assigned mortgage, and the fact that the Debtors listed PHH as their mortgage creditor on their schedules, is enough to establish that PHH had standing on the day of filing. In sum, although PHH offered no evidence to prove its chain of title other than attaching the indorsed Note to its Second Amended Proof of Claim the day before trial, the Debtors' suspicions regarding when these indorsements to the Note were executed are not sufficient to rebut the *prima facie* validity afforded PHH's Second Amended Proof of Claim.

## Reasonableness of Foreclosure Fees

The Court has the authority to review the portion of the arrearage claim for prepetition

---

[8] The last minute filing of the Second Amended Proof of Claim with the indorsed Note would be more problematic had counsel for PHH not explained that she had previously sent Debtors' counsel a copy of the indorsed note and did not believe PHH's standing was still an issue. Debtors' counsel did not refute that he had received the indorsed Note but argued that standing had been an issue since their initial objection was filed.

foreclosure fees for reasonableness pursuant to the loan documents in this case.[9] Specifically, Paragraph 9 of the Mortgage provides that "Lender may do and pay for whatever is ***reasonable or appropriate*** to protect Lender's interest in the Property and rights under this Security Instrument." (Emphasis added.) Additionally, under Arkansas law, contract provisions calling for an award of attorney fees are subject to court review for reasonableness. *See generally Troutt v. First Federal Sav. & Loan Ass'n of Hot Springs,* 280 Ark. 505, 507, 659 S.W.2d 183, 184 (Ark. 1983) (stating that customary provisions in notes calling for a 10% attorney's fee upon default "should not lead to the arbitrary setting of fees based on fixed percentages. . . . ***Fees in such cases should not exceed an amount that is reasonable in each case.***") (Emphasis added).[10]

In connection with their objection to the reasonableness of the fees charged by PHH

---

[9] Although Debtors' counsel cited 11 U.S.C. § 506(b) as the basis for the Court's review of the reasonableness of the foreclosure fees at issue, there is ample authority holding that § 506(b) does not apply to pre-petition interest, fees or costs, which are instead allowed as part of the underlying claim but may be subject to review under the controlling loan documents and state law. *See e.g., In re Woods Gallery, Inc.,* 379 B.R. 875, 882 (Bankr. W.D. Mo. 2007), and cases cited therein.

[10] The Court did not find an Arkansas case regarding the award of fees for foreclosure services. Rather, the case law focuses on the award of attorney fees. The Eighth Circuit has explained that Arkansas law once disfavored attorney fee awards even if provided for in a note or related instrument, but in 1951, the Arkansas legislature passed Act 350 which allowed for a provision in a promissory note for the payment of reasonable attorneys' fees not to exceed 10% of the principal amount due for services actually rendered. *In re Morris*, 602 F.2d 826, 828 (8th Cir. 1979).

Arkansas later enacted Ark. Code Ann. § 16-22-308 which provides: "[i]n any civil action to recover on an open account, statement of account, account stated, promissory note, bill, negotiable instrument, or contract relating to the purchase or sale of goods, wares, or merchandise, or for labor or services, or breach of contract, unless otherwise provided by law or the contract which is the subject matter of the action, the prevailing party may be allowed a reasonable attorney's fee to be assessed by the court and collected as costs."

for the three foreclosures initiated by PHH, the Debtors successfully rebutted the *prima facie* claim of PHH as to all fees incurred in connection with the first foreclosure, the fees for assigning the mortgage, and those fees charged for posting and cancellation in connection with the second and third foreclosures.

With respect to the first foreclosure, the Debtors submitted the assignment of mortgage from GE Money Bank to PHH with an effective date of May 19, 2009. PHH introduced no evidence as to when GE Money Bank actually indorsed the note to PHH. The assignment of mortgage is effective May 19, 2009, and accordingly, that is the only evidence before the Court showing that any interest in the Note or mortgage was transferred to PHH. Because PHH initiated the first foreclosure no later than February 27, 2009 (with the first Notice of Foreclosure), and there is no evidence that PHH was the mortgagee before May 19, 2009, the first foreclosure would have been invalid under the Arkansas Statutory Foreclosure Act.[11] Accordingly, all fees associated with the first foreclosure are unreasonable and should not be charged to the Debtor.

Debtor also objects to being charged for the fees associated with GE Money Bank assigning the mortgage to PHH. PHH's counsel made no argument in defense of these charges, and the portions of the Mortgage (paragraphs 9, 14 and 22 recited in the facts of this

---

[11] *See* Ark. Code Ann. § 18-50-103 (providing that a mortgagee may not conduct a foreclosure sale unless the mortgage is filed for record with the recorder of the county in which the trust property is situated); Ark. Code Ann. § 18-50-116 (providing that "a claim or defense of a person or entity asserting his or her or its legal and equitable rights shall be asserted before the sale or it is forever barred and terminated, except that the mortgagor may assert the following against either the mortgagee or trustee: (i) Fraud; or (ii) **Failure to strictly comply with the provisions of this chapter.**") (Emphasis added.)

13

Opinion) she had read into evidence do not support a charge for anything other than something related to Debtors' default. An assignment from one creditor to another is not due to the Debtors' default and should not be charged to the Debtors. Accordingly, PHH has not met its burden to show that these charges are reasonable, and therefore, any charges for assignment of the Mortgage are disallowed.

With respect to the second and third foreclosures, the Debtors put on ample evidence to rebut the *prima facie* validity of some of these fees. Through the testimony of Ms. Griffith, Debtors showed that they were charged $425 for someone to walk inside the courthouse and thumbtack a foreclosure notice onto a bulletin board, and that they were charged $175 for canceling a foreclosure even though the clerk's office only charges a $20 recording fee. While the third party agent providing these services most certainly incurs greater costs than those charged by the Clerk's office and can reasonably charge for the services it provides, PHH offered no evidence to explain why these charges were as high as they are. PHH merely claimed it was required to use a third party agent to conduct the foreclosure related services, and that it had no control over what that third party charged. PHH's counsel said that PHH invited the third party agent to testify as to the reasonableness of its fees but it declined to do so. If PHH wanted to be reimbursed for these fees, at the very least, it should have subpoenaed the third party agent. Given absolutely no explanation for what appears to be exorbitant charges for the services performed, the Court finds that the Debtors have rebutted the reasonableness of the fees charged for posting and cancellation of sale, and PHH did not subsequently meet its burden to show that such fees are valid, and

14

these fees are therefore disallowed.

## CONCLUSION

For the foregoing reasons, the Court concludes that although PHH did not initially attach an indorsed note to its proof of claim, it ultimately produced and filed the indorsed Note. The indorsed Note together with a recorded Assignment of Mortgage executed and recorded prior to the Debtor's bankruptcy, and the fact that Debtors listed PHH as their mortgage creditor, shows that PHH had standing to file its claim. Further, the Debtors have rebutted the reasonableness of the fees charged for the first foreclosure proceeding, the fees for assigning the mortgage, and the fees for posting and cancellation of foreclosure sales, and PHH did not subsequently meet its burden to show that such fees are valid. Accordingly, those fees are disallowed. It is hereby

**ORDERED** that the *Objection to Proof of Claim* is **SUSTAINED** in part, and **OVERRULED** in part; and it is further

**ORDERED** that PHH has 21 days in which to file an amended claim in accordance with this Opinion and Order; if PHH fails to file an amended claim, its claim will be disallowed.

**IT IS SO ORDERED.**

*[signature]*
Audrey R. Evans
United States Bankruptcy Judge
Dated: 03/22/2011

cc:   Debtors
      Joel Hargis, attorney for Debtors
      Sharon Fewell, attorney for PHH
      Mark T. McCarty, Trustee
      U.S. Trustee

15